IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TRACIE DEVRIES,                                )
                                               )
                        Plaintiff,             )        Civil Case No. 08-1259-KI
                                               )
            vs.                                )        OPINION AND ORDER
                                               )
MICHAEL J. ASTRUE,                             )
Commissioner of Social Security,               )
                                               )
                        Defendant.             )
_____               )


        Max Rae
        P. O. Box 7790
        Salem, Oregon  97303

                Attorney for Plaintiff

        Kent S. Robinson
        Acting United States Attorney
        District of Oregon
        Adrian L. Brown
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, Oregon  97204-2902

Franco L. Becia
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Tracie DeVries brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his age, education, and work experience.  The burden shifts to the

Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra,

481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to perform

other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

### THE ALJ'S DECISION

After reviewing the evidence, the ALJ found that DeVries has severe impairments of

depression, post-traumatic stress disorder ("PTSD"), and polysubstance abuse from the use of

alcohol, marijuana, and methamphetamine.  The ALJ also found that these impairments, either

singly or in combination, were not severe enough to meet or medically equal the requirements of

any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  After

discrediting DeVries and the statements of some health care professionals, the ALJ determined

that DeVries had the residual functional capacity to perform work at all exertional levels

consisting of simple, repetitive work with only occasional public interaction.  Based on

vocational expert testimony, the ALJ found that DeVries could perform her past relevant work as

a cannery worker and veterinary clinic animal attendant and, consequently, was not disabled

under the Act.  The ALJ made an alternative step five finding that DeVries could also work as a

laundry worker and industrial cleaner/janitor.

### FACTS

DeVries claims to have been disabled since July 1, 2002 due to symptoms from mental

illness, including depression, anxiety, concentration problems, and hallucinations.  DeVries was

physically and sexually abused by several different people when she was both a child and a

young adult, resulting in PTSD.  She was 34 years old at the time of the ALJ's opinion and has

worked as a certified nursing assistant, cannery worker, busperson dishwasher, home caregiver,

courier, sandwich worker, and veterinary clinic animal attendant.  DeVries has a high school

education and has taken a few college classes.

DeVries lives with her daughter, who was 11 in 2006, but was homeless from November

2006 through the supplemental hearing in March 2007.  In December 2005, DeVries reported

that her daughter was living with an aunt because DeVries felt "too messed up" to care for her

daughter at the time.  Tr. 150.  The daughter also lived with an aunt while DeVries was homeless

and spent time living with DeVries' mother in 2003 because DeVries could not care for her.

Although DeVries has no severe physical impairments, she claims to suffer from a variety

of mental symptoms.  DeVries alternates between sleeping for days at a time and being unable to

sleep for days.  DeVries does not remember to bathe, change her clothes, feed herself, or take her

medication without reminders.  She suffers from anxiety and panic attacks.  Her fear of strangers

and crowds limits her shopping to no more than fifteen minutes in a store unless she is with a

friend.  DeVries only leaves her home regularly to attend her therapy sessions.  She has trouble

Page 5 - OPINION AND ORDER

concentrating and remembering things, hears voices, sees hallucinations of dead people, and has

flashbacks and suicidal thoughts.  DeVries feels like she loses contact with her surroundings at

times, a symptom known as a disassociative episode, and cannot remember what happened

during a few hours.  To deal with anxiety, DeVries cuts herself, draws blood with a syringe, and

performs counting rituals.

DeVries takes a variety of psychiatric drugs, including clonidine, Prozac, trazadone, and

Zyprexa.  She has had several emergency room visits for rapid heart rates and hyperventilation.

DeVries had a 15-day psychiatric hospitalization in March 2007 for suicidal ideation during

which she reported three previous suicide attempts.

DeVries has a history of drug and alcohol abuse, with her drug use primarily

methamphetamine and marijuana.  She has received substance abuse treatment and has had

periods of complete sobriety lasting several months before relapsing.  At the time of the hearing

in August 2006, DeVries was using marijuana a couple of times a week to prevent

self-mutilation, to quiet the noises in her head, and to relax her muscles so she could sit still.

**DISCUSSION**

I.      DeVries' Subjective Symptom Testimony

The ALJ found that DeVries' statements about the intensity, persistence, and limiting

effects of her symptoms were not entirely credible.

DeVries argues that the ALJ failed to properly evaluate her subjective symptom

testimony.  She claims that her testimony was corroborated by the providers treating her at Valley

Mental Health.  DeVries also relies on corroborative testimony from her friends and her former

employer, which the ALJ found to be generally credible.

Page 6 - OPINION AND ORDER

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The threshold issue is what standard to apply to the ALJ's conclusion. The ALJ noted that after conducting psychological testing, Dr. Pitchford stated that the test results were not confirmed as valid because several validity measures indicated a lack of meaningful effort and/or a tendency to feign or exaggerate symptoms. DeVries argues that Dr. Pitchford expressly declined to make a diagnosis of malingering or factitious disorder. She argues that the fact that the tests did not generate reliable data does not make her a liar.

I agree with DeVries and do not accept the Commissioner's argument that Dr. Pitchford's statement is affirmative evidence of malingering. Dr. Pitchford declined to make that diagnosis. Accordingly, I will consider whether the ALJ gave specific, clear, and convincing reasons for his rejection of DeVries' credibility.

The ALJ reasoned that the objective medical evidence did not fully support DeVries' complaints. He noted that on two occasions in 2003 and 2004, medical providers noted that DeVries did not appear depressed, was well oriented, and was in no acute distress.

Page 7 - OPINION AND ORDER

DeVries contends that this is not a proper basis to discredit credibility.  DeVries maintains that the fact that she appeared well to an observer on two specific occasions is not substantial evidence to justify failing to fully credit her description of her inability to sustain consistent work functioning.

It is acceptable to consider the medical evidence in determining the severity of symptoms. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (although ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects).  I agree with DeVries, however, that noting a few times in which she was psychologically stable is not a valid reason to discredit her testimony when viewed in light of the treatment notes from Valley Mental Health documenting DeVries' nearly weekly appointments, plus additional crisis phone calls, from October 2000 through March 2007, the time of the last hearing with the ALJ.  A careful reading of the treatment notes compels the conclusion that DeVries suffers from severe psychological problems.  This is validated by her 15-day psychiatric hospitalization in March 2007 for suicidal ideation.  The ALJ's reasoning on this issue is not supported by substantial evidence.

The ALJ commented that DeVries' 2002 work as a courier did not show up on her work history.  He reasoned that for eight months, she had no accidents even though each week she worked 15 hours and drove about 150 miles without an accident.  The ALJ believed that demonstrated that DeVries' condition was treatable because she performed fine in the job. DeVries argues that she performed the task without pay for her partner who eventually stopped using DeVries' help because of her problems and mistakes.  I note that there is no record of DeVries being paid.  The hours were less than half time.  The fact that DeVries had no car

Page 8 - OPINION AND ORDER

accidents does not necessarily lead to the conclusion that she did well in the job.  Again, I conclude the ALJ's reason is not supported by substantial evidence.

The ALJ noted that on April 11, 2005, DeVries reported to an RN that she did not leave her home for any period of time, even though DeVries went to a casino on February 16, 2003. DeVries argues that not only were the events two years apart, the casino trip precipitated decompensation and a need for crisis coverage.

The record contains a Valley Mental Health treatment note from February 16, 2003 which notes a phone call from the Salem Hospital emergency answering service about DeVries.  When the counselor reached DeVries, she reported that the casino trip triggered a panic attack and dreams which DeVries could not distinguish from reality.  This indicates the difficulties DeVries faces when leaving the house.  The two-year span between the trip and the supposedly inconsistent report also undercuts the persuasiveness of the ALJ's reasoning.

The ALJ then noted DeVries' activities, including taking college classes for two semesters and attending a pagan holiday celebration.  DeVries characterizes these as isolated incidents in treatment notes spanning several years indicating when she left her house.  She argues that the fact that the outings were reported indicates the significance they had in relation to the general pattern of her life.  Thus, DeVries claims that, read as a whole, the references show that while she was not always homebound, she had serious difficulty sustaining independent, effective functioning within the community.

I again agree with DeVries.  The record contains years of treatment notes describing isolation interspersed with occasional trips outside the home.  The number of these excursions is quite small in comparison to the periods during which DeVries was primarily housebound.  Thus, the extent of her daily activities is also not a clear and convincing reason to discredit DeVries.

Page 9 - OPINION AND ORDER

After my review of the record, particularly as documented in detail for nearly seven years

by DeVries' counselors at Valley Mental Health, I was struck by the severity of DeVries' mental

health symptoms.  Two documents in the record are particularly telling.  The first is a treatment

note from Valley Mental Health dated February 5, 2006, 9:55 PM-10:30 PM, which I will

paraphrase from the medical abbreviations:

> Client's daughter [who was ten or eleven at the time] calls via answering
> service.  Client in crisis and is decreasingly/increasingly unresponsive
> (disassociation).  Conflict with boyfriend and stolen rent money.  Client with
> some suicidal ideation and suicidal gestures (reaching for kitchen knives, pills)
> but stopped by daughter.  Consult with friend and daughter on crisis options –
> [undecipherable], monitoring – monitoring decided on.  Client offered a
> February 6 appointment.  Client supported, reassured.  Consulted with friends.
> Client to call if problems.

Tr. 506.

The second is a letter from Kristin Sahlin, a friend that DeVries stayed with for three

weeks in February 2007:

> My observation is that there is no way Tracie is capable of holding a job at
> this time, in truth she is not even capable of dealing with the day to day necessities
> of daily life.  Specifically Tracie needs outside reminders daily to take her
> medications, to change her clothes and to bathe.  Tracie is unable to force herself
> to let anyone know when she is hungry let alone the ability to serve herself and
> she definitely cannot prepare her own meals at this time.
>
> In the three weeks that I lived with Tracie she experienced six breakdown
> episodes of varying degrees.  Three of these breakdowns required constant
> monitoring to prevent her from harming herself, this is the most focused her mind
> becomes when she wants to cut herself, when all of her faculties are used to get
> around any safeguards that are initiate[d] for her protection.  The three other
> episodes revolved around her losing time.  The lightest of these episodes was the
> loss of hours in a day where she needed constant reminding about what was going
> on and where she had been or doing for the past several hours.  The more severe
> episode left her very childlike and withdrawn for about five hours before she
> started to get her thoughts re-centered.  These episodes were a reaction to being
> frightened.

Page 10 - OPINION AND ORDER

>Tracie is very reserved and mistrusting of people and does not do well in
>group settings. Whenever there were more than three people in the room she
>would become more withdrawn and disconnected with her surroundings. She also
>has strong personal space issues that when breached send her into episodes of
>disorientation and occasionally she will threaten violence to the offender. She is
>generally agoraphobic but can deal with specific short-term tasks but will require
>a fair amount of recovery time after each errand that she completes. She is easily
>overwhelmed by too many choices or too much activity that happens in most
>public situations such as grocery shopping to do more than retrieve more than one
>or two items at a time. Such tasks usually require a great deal of preplanning and
>mental preparation before she can attempt these tasks.

Tr. 216.

The ALJ considered Sahlin's statement and found it to be generally credible to the extent
it constituted observations of DeVries' behavior. The ALJ concluded, however, that the
statement provided no basis to change his conclusions that DeVries could perform simple routine
work with occasional contact with co-workers. I must disagree–I do not see how anyone could
work with symptoms this severe.

In summary, the ALJ has not provided specific, clear and convincing reasons to discredit
DeVries' subjective symptom testimony.

II.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to
award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court
should credit evidence and immediately award benefits if the ALJ failed to provide legally
sufficient reasons for rejecting the evidence, there are no issues to be resolved before a
determination of disability can be made, and it is clear from the record that the ALJ would be
required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied,
remand for payment of benefits is warranted regardless of whether the ALJ might have

articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79

(9th Cir.), cert. denied, 531 U.S. 1038 (2000).

   The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the

Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Vasquez v.

Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (recognizing split within the circuit on whether the rule

is mandatory or discretionary but not resolving the conflict).  The court has the flexibility to

remand to allow the ALJ to make further determinations, including reconsidering the credibility

of the claimant.  Connett, 340 F.3d at 876.  On the other hand, "in the unusual case in which it is

clear from the record that the claimant is unable to perform gainful employment in the national

economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits

is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

   I decline to address the other arguments raised by DeVries because it is clear to me that

she is disabled when abusing drugs and alcohol.  I base this conclusion on DeVries' testimony,

which I credit as true, the lay statement of Sahlin, quoted above, and the treatment notes from

Valley Mental Health.  DeVries' ongoing drug and alcohol abuse leaves an unresolved issue,

however.

> Under 42 U.S.C. § 423(d)(2)(C), a claimant cannot receive disability benefits "if
> alcoholism or drug addiction would . . . be a contributing factor material to the
> Commissioner's determination that the individual is disabled." . . . Under the
> implementing regulations, the ALJ must conduct a drug abuse and alcoholism
> analysis ("DAA Analysis") by determining which of the claimant's disabling
> limitations would remain if the claimant stopped using drugs or alcohol.
> 20 C.F.R. § 404.1535(b).  If the remaining limitations would still be disabling,
> then the claimant's drug addiction or alcoholism is not a contributing factor
> material to his disability.  If the remaining limitations would not be disabling, then
> the claimant's substance abuse is material and benefits must be denied.

<u>Parra</u>, 481 F.3d at 746-47.  The drug and alcohol analysis is only performed "[i]f we find that you are disabled."  20 C.F.R. § 404.1535(a); <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955 (9th Cir. 2001) (ALJ must identify disability under the five-step procedure before conducting a drug and alcohol abuse analysis to determine if substance abuse was material to disability).  The claimant has the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability.  <u>Parra</u>, 481 F.3d at 748.

Consequently, I remand the action to allow the Commissioner to perform a DAA analysis to determine if DeVries would remain disabled if she stopped using drugs and alcohol.  In making this determination, the ALJ may update the medical record and arrange for any additional testing needed but may not reconsider DeVries' credibility.  The ALJ must consider DeVries' subjective symptom testimony credible when conducting the DAA analysis.

**CONCLUSION**

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____4th_____ day of November, 2009.


   /s/ Garr M. King_____
Garr M. King
United States District Judge